# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**HENRY HINTON, JR.**                                                                                          **PLAINTIFF**

**v.**                                                                       **CIVIL ACTION NO. 5:15-cv-77-DCB-MTP**

**PIKE COUNTY, ET AL.**                                                                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court for an evidentiary hearing on January 29, 2018, pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).[1] Plaintiff appeared *pro se*, and Honorable Wayne Dowdy appeared on behalf of Defendants Pike County, Sheriff Mark Sheppard, Glen Green, and Lieutenant Smith. Having heard the arguments of the parties and considered all the evidence, the undersigned finds that Plaintiff failed to prove by a preponderance of the evidence the claims asserted against the Defendants. Accordingly, the undersigned recommends that this matter be dismissed.

## BACKGROUND

This lawsuit arises from events which took place while Plaintiff was incarcerated at the Pike County Jail.[2] According to Plaintiff, he entered the jail on June 30, 2014, and was

---

[1] On February 23, 2016, United States District Judge David Bramlette referred this matter to the undersigned United States Magistrate Judge for all further proceedings, including evidentiary hearings, pursuant to 28 U.S.C. § 636 and Rule 72. *See* Order [34] (referring this matter to the Magistrate Judge to, *inter alia*, conduct hearings and submit to the District Judge "proposed findings of fact and recommendations for the disposition of this cause.").

[2] Plaintiff also filed two other lawsuits arising from events which took place at the Pike County Jail. *See* Civil Action No. 5:16-cv-14-KS-MTP; Civil Action No. 5:16-cv-33-DCB-MTP. Additionally, Plaintiff filed a lawsuit concerning the events surrounding his arrest in Pike County, but the Court dismissed that action on December 12, 2016. *See* Civil Action No. 5:16-cv-15-DCB-MTP.

transferred to a Mississippi Department of Corrections facility on November 24, 2015. Plaintiff asserts three claims in this action: (1) a denial of access to court claim against Defendant Sheppard; (2) a conditions of his confinement claim against Defendants Sheppard, Green, and Smith; and (3) a failure to protect claim against Defendant Sheppard. Plaintiff seeks compensatory and punitive damages from Defendants.

## ANALYSIS

**Denial of Access to Court Claim**

Plaintiff claims that he lost a forfeiture hearing in state court and missed his opportunity to appeal the forfeiture ruling because he did not have access to a law library or other legal assistance while housed in the Pike County Jail. At the evidentiary hearing, Plaintiff testified that that he was arrested on June 30, 2014, and at the time of his arrest, police officers seized $7,746.00. Plaintiff testified that the money was discovered in a backpack along with marijuana.[3] Plaintiff testified that he was charged with intent to distribute controlled substances and the prosecution pressured him to enter a guilty plea. Plaintiff testified that he dismissed his first two public defenders because they recommended that he enter a guilty plea. On October 5, 2015, after Plaintiff was appointed a third public defendant, he entered an *Alford* plea.[4] Plaintiff submitted into evidence a transcript of his plea hearing. *See* Plaintiff's Exhibit L.

---

[3] Plaintiff testified that officers found seven grams of marijuana in the backpack, but the transcript of Plaintiff's plea hearing in state court indicates that officers found twenty grams of marijuana in Plaintiff's possession. *See* Plaintiff's Exhibit L.

[4] In an *Alford* plea, sometimes referred to as a "best interest plea," an accused "may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970). A trial court may accept an *Alford* plea if "the record before the judge contains strong evidence of actual guilt." *Id*.

Plaintiff testified that while he was in jail, he filed a claim in state court for the seized $7,746.00 and, in November of 2015, attended a forfeiture hearing in state court. During the hearing, the money was ordered forfeited. Plaintiff submitted into evidence the state court's forfeiture order. *See* Plaintiff's Exhibit L. Plaintiff testified that, after the forfeiture order was entered, he wrote the clerk of court regarding an appeal, but by the time he received the clerk's response, his deadline to appeal the forfeiture order had passed. Plaintiff submitted into evidence his letter and the clerk's response. *See* Plaintiff's Exhibit L.

Plaintiff testified that the Pike County Jail did not have a law library nor any legal aid officials. Plaintiff also testified that he requested that the jail administrator, Defendant Glen Green, provide him a copy of the rules of civil procedure. Defendant Green testified that he did not recall Plaintiff ever requesting a copy of the rules of civil procedure. Defendant Green, however, testified that the jail did not have a law library. According to Green, a law library was unnecessary because each of the inmates housed in the jail was represented by an attorney.

Plaintiff testified that because he did not have access to a law library or other legal assistance, he lost at the forfeiture hearing and missed his opportunity to appeal the forfeiture ruling. According to Plaintiff, if he would have had access to a law library or legal assistance, he would have prevailed at the forfeiture hearing because the State wrongfully used his *Alford* plea, which was not an admission of guilt, to support the forfeiture. Plaintiff also asserts that, with access to a law library or legal assistance, he would have known how and when to appeal the forfeiture ruling.

Prisoners possess a constitutional right of access to courts, including having the "ability . . . to prepare and transmit a necessary legal document to court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996). The right of access to the courts is limited to allow prisoners opportunities

3

to file nonfrivolous claims challenging their convictions or conditions of confinement. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citation omitted).

However, "[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992). It is only when a prisoner suffers some sort of actual prejudice or detriment from denial of access to the courts that the allegation becomes one of constitutional magnitude. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). To prove his claim, a plaintiff must show real detriment—a true denial of access, such as the loss of a motion; the loss of a right to commence, prosecute, or appeal in a court; or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970).

>Mississippi Code Annotated § 41-29-179(2) provides as follows:
>
>If the owner of the property has filed an answer denying that the property is subject to forfeiture, then the burden is on the petitioner to prove that the property is subject to forfeiture. However, if an answer has not been filed by the owner of the property, the petition for forfeiture may be introduced into evidence and is prima facie evidence that the property is subject to forfeiture. The standard of proof placed upon the petitioner in regard to property forfeited under the provisions of this article shall be by a preponderance of the evidence.

Miss. Code Ann. § 41-29-179(2).

The burden of proof in a forfeiture action differs from that involved in a criminal trial. The government need not prove beyond a reasonable doubt that a connection exists between the forfeited property and the illegal activity. Thus, a criminal conviction is not a prerequisite to a

4

civil forfeiture. *See State ex rel. Mississippi Bureau of Narcotics v. Lincoln County*, 605 So. 2d 802, 804 (Miss. 1992).

Mississippi Code Annotated § 41-29-153 identifies property subject to forfeiture, including money. Section 41-29-153(7) provides that "[a]ll monies, coin and currency found in close proximity to forfeitable controlled substances . . . are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption."

The state court's forfeiture order states that the "Mississippi Bureau of Narcotics has put forth proof that property at issue is subject to forfeiture under the provisions of §§ 4[1]-29-153(a)(5) and 41-29-153(a)(7) of the Mississippi Code of 1972, as amended, having been used, or intended for use, in violation of the Uniform Controlled Substances Law and having been found in close proximity to forfeitable controlled substances, to-wit: marijuana." *See* Plaintiff's Exhibit L. During testimony before this Court, Plaintiff admitted that the $7,746.00 was found in a backpack along with marijuana. Additionally, during Plaintiff's plea hearing, the state court asked Plaintiff the following: "Are you satisfied that if we brought a jury in here, and they heard the four charges, that there would be enough evidence that they might conclude that you were guilty of each of the charges?" Plaintiff responded "yes, sir." *See* Plaintiff's Exhibit L.

The state court also explained to Plaintiff that a police officer would testify that he saw Plaintiff throw two prescription bottles out of his vehicle, which contained a substantial quantity of hydrocodone obtained by fraudulent prescriptions. The state court explained that officers found twenty grams of marijuana and over five units of Alprazolam in Plaintiff's possession. The court also explained that records would be presented that indicate Plaintiff planned to distribute the controlled substances. *See* Plaintiff's Exhibit L.

Plaintiff failed to prove that he suffered any sort of actual prejudice. The record demonstrates that sufficient evidence was available to prove by a preponderance of the evidence that the money at issue was found in close proximity to forfeitable controlled substances and was used, or intended for use, in violation of the Uniform Controlled Substances Law. Additionally, Plaintiff has failed to prove that any appeal of the forfeiture order would have had arguable merit amounting to "more than hope." *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002).[5] Based on the foregoing, the undersigned concludes that Plaintiff has failed to establish by a preponderance of the evidence that Defendant Sheppard violated his constitutional rights by denying him access to courts.

**Conditions of Confinement Claim**

During the evidentiary hearing, Plaintiff complained that he was provided inadequate clothing and supplies while at the Pike County Jail. Plaintiff also complained about hazardous and unsanitary conditions at the jail. Specifically, Plaintiff testified that when he arrived at the Pike County Jail, he was provided one jumpsuit, but his underwear was confiscated because only white or grey underwear was allowed at the jail. According to Plaintiff, inmates had to purchase underwear from the jail commissary. Plaintiff testified that jail officials offered to launder inmates' jumpsuits once a week, but because he was only provided one jumpsuit and no underwear, he was unable to get it laundered as he did not want to be naked. Plaintiff also testified that he was not provided a coat, which left him with the choice of staying inside during recreation periods or going outside and being cold.

---

[5] The only issue for appeal identified by Plaintiff was his argument that the State wrongfully used his *Alford* plea to support the forfeiture. This issue is frivolous as the record demonstrates that the $7,746.00 was subject to forfeiture under the provisions of Miss. Code Ann. § 41-29-153.

Jail Administrator Defendant Green also testified that jail officials offered to lauder clothes once a week. Defendant Green, however, testified that if an inmate turned a jumpsuit in to be laundered, he was issued another clean jumpsuit. Defendant Green also testified that the facility was well heated and inmates had the option of purchasing a coat from the commissary.

Plaintiff testified that he was provided one bar of soap when he arrived at the jail, but officers would not provide him additional soap because of Defendant Green's policy, which only allowed new inmates to get soap. According to Plaintiff, inmates had to purchase additional soap instead of receiving free soap. Plaintiff also testified that he was not provided a towel and did not have money to purchase a towel.

Donna Adams, a correctional officer at the jail during the time of Plaintiff's incarceration, testified that despite the policy regarding additional soap, officers were instructed to pass out soap to the inmates. Indeed, Plaintiff admitted at the hearing that officers would provide additional soap to inmates. Adams also testified that during inmate booking/intake, she would provide inmates towels. According to Adams, towels were included in the inmates' intake packages. Defendant Green testified that all inmates had towels.

Plaintiff testified that he was provided a blanket but no bed sheets and, as a result, had to sleep on a plastic mattress. According to Plaintiff, this was uncomfortable because he would sweat during the night. In response, Defendant Green testified that sheets were not provided because they were considered a hazard as they could be used by inmates to hang themselves. Green also testified that cost was a factor in the decision not to provide sheets.

Plaintiff also stated that officers did not provide the inmates any cleaning supplies, which resulted in mold in the showers and dirty cells. According to Plaintiff, bleach was sprayed in the shower once a month. In response, both Defendant Green and Donna Adams testified that each

7

morning inmates were provided cleaning supplies, including mops, mop buckets, soap, and toilet bushes. Plaintiff even admitted that inmates were provided a mop and mop bucket. According to Defendant Green, most of the inmates would keep their area clean.

Adams testified that officers previously provided inmates spray bottles filled with bleach to clean the showers each morning. According to Adams, however, the policy was changed, and thereafter, trustees were allowed to spray bleach in the showers every two weeks. Adams testified that mold use to appear in the showers rather quickly, but during Plaintiff's incarceration, the showers were repainted using a mold resistant paint. Plaintiff testified that he remembered the showers being painted.

Plaintiff testified that lights in many of the cells were broken and that certain cells had metal plates welded over the windows. Plaintiff also testified that the jail contained exposed electrical wires, which resulted in him being shocked on multiple occasions. Plaintiff testified that Defendant Smith stated the lights would be fixed when the inmates stopped breaking them. According to Plaintiff, he was housed without lights in one of his cells for seven months. Plaintiff submitted into evidence a letter he wrote to the maintenance supervisor stating, "you told me you would be right back and refit the blub ends, I waited and waited. You got a chance to see how dark 120 is. . . . Would you please come back today. . . ." *See* Plaintiff's Exhibit H1.2.

Defendant Green testified that two cells in the jail had windows with metal plates welded over them due to inmate destruction. Green also testified that inmates would often break their lights and utilize exposed wires to heat coffee and for other purposes. According to Green, once officials became aware of a broken light, the maintenance department would repair or replace

8

them as soon as possible.  Donna Adam also testified that once a light was broken, the maintenance men would be notified and they would fix the lights.

The Eighth Amendment protects inmates from cruel and unusual punishment and requires prison officials to provide humane conditions of confinement. *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999).  As a pretrial detainee, however, Plaintiff's constitutional right to adequate conditions of confinement "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Pretrial detainees have a due process right not to be subjected to jail conditions that are imposed for the purpose of punishment. *Bell*, 441 U.S. at 535; *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996).  For Section 1983 claims by pretrial detainees, the Fifth Circuit Court of Appeals has distinguished between claims regarding specific acts by officials and those regarding the general conditions of confinement. *See Hare*, 74 F.3d at 639.  A conditions of confinement claim is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Id*. at 643-44.  In order to succeed on a claim alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for his "basic human needs." *Shepherd v. Dallas Cnty*, 591 F.3d 445, 454 (5th Cir. 2009).  A punitive purpose may be inferred where the conditions are not reasonably related to a legitimate governmental interest. *Hamilton*, 74 F.3d at 105.

An episodic act or omission claim requires courts to employ the standard of deliberate indifference.  This involves the following elements of proof: (1) an objective component, under which the detainee must prove his exposure to a harm or injury that violates contemporaneous

standards of decency, and (2) a subjective component, under which the detainee must prove that the defendants' conduct evidences a deliberate indifference to that exposure. *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993). In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To be "sufficiently serious," the deprivation must deny a plaintiff of "the minimal measure of life's necessities." *Palmer*, 193 F.3d at 352. Under the subjective component, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837.

Based on the testimony and evidence submitted at the evidentiary hearing, the undersigned concludes that Defendants did not violate Plaintiff's constitutional right concerning the conditions of his confinement. Defendants did not dispute Plaintiff's testimony that he was not provided a coat or sheets. Plaintiff, however, did not prove that these conditions were imposed for a punitive purpose or that they resulted in "serious deficiencies" in providing for his "basic human needs." *See Shepherd*, 591 F.3d at 454. Defendant Green specifically testified that sheets were not provided because inmates could use the sheets to hang themselves. Jail officials have a legitimate governmental interest in protecting inmates from suicide. *See Phillips v. East*, 81 Fed. App'x. 483, 485 (5th Cir. 2003) ("The denial of a blanket and a mattress was pursuant to a prison regulation denying bedding to inmates in isolation in order to prevent the higher risk of inmate suicide, a legitimate penological interest."). Moreover, while sleeping without sheets and

10

going outside without a coat for a short period of time may be uncomfortable, these conditions did not constitute a deprivation of Plaintiff's basic human needs. "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee v. Hennigan*, 98 Fed. App'x. 286, 288 (5th Cir. 2004).

Concerning Plaintiff's remaining conditions of confinement claims, the undersigned finds that the more reliable evidence supports a finding that Defendants did not violate Plaintiff's constitutional rights. Donna Adams testified that she and other officers provided soap, towels, and cleaning supplies to inmates. Plaintiff even admitted that soap and certain cleaning supplies were sometimes provided and admitted that the showers were painted during his incarceration. Defendant Green contradicted Plaintiff's testimony regarding his inability to launder his jumpsuit. According to Defendant Green, if an inmate turned a jumpsuit in to be laundered, he was issued another clean jumpsuit. The undersigned finds this testimony credible.

Defendant Green and Adams also contradicted Plaintiff's testimony concerning lights by testifying that the maintenance department would repair or replace broken lights as soon as possible. The evidence submitted by Plaintiff supports this testimony. One of Plaintiff's exhibits demonstrates that a maintenance man checked on Plaintiff's lighting and informed Plaintiff he would be back to fix the light. *See* Plaintiff's Exhibit H1.2. In another exhibit submitted by Plaintiff, he thanked officials for "promptly responding by repairing the hot water and replacing the nite [sic] light." *See* Plaintiff's Exhibit G2.

The undersigned finds that Defendants did not subject Plaintiff to conditions which resulted in "serious deficiencies" in providing for his "basic human needs." *See Shepherd*, 591

F.3d at 454. Additionally, to the extent Plaintiff sought to prove an episodic act or omission claim, he has failed to prove that Defendants acted with the requisite deliberate indifference.

Moreover, Plaintiff's claims for compensatory damages are barred by the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, *et seq*. Plaintiff did not prove by a preponderance of the evidence that he suffered a physical injury. Thus, Plaintiff's claims for compensatory damages should be denied. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) ("Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries nonrecoverable, absent physical injury.").[6]

**Failure to Protect Claim**

Plaintiff testified that towards the end of May, 2015, jail officials moved him from housing zone C, which housed older inmates, to housing zone D, which housed violent offenders.[7] Plaintiff testified that he wrote the kitchen staff, complaining about the amount of salt in the food. According to Plaintiff, a jail trustee informed the other inmates that Plaintiff had complained about the amount of salt in the food. Plaintiff testified that in early July, 2015, Inmate Harris began throwing water in Plaintiff's cell because of his complaints regarding the food. According to Plaintiff, Harris was removed from D zone, but because officers did not file a report about the incident, Harris was eventually returned to D zone.

---

[6] Despite the limitations imposed by § 1997e(e), a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional right, but Plaintiff has failed to prove a constitutional violation. *See Hutchins v. McDaniels*, 512 F.3d 193, 197-98 (5th Cir. 2007).

[7] Plaintiff also testified that around this same time period officials began referring to him as Reginald Alford, not Henry Hinton. According to Plaintiff, officials moved him and began referring to him by another name in retaliation for him filing lawsuits.

Plaintiff testified that on July 21, 2015, five inmates, including Harris, attacked him and stabbed him under his eye. According to Plaintiff, his doctor informed him that, as a result of the injury, he has droopy eye syndrome and needs surgery. Plaintiff testified that during the attack, he could not call for help because the intercom in his cell was not functioning. Plaintiff also testified that no one was manning the security tower at the time of the attack.

Defendant Green and Donna Adams testified that inmates often destroyed the intercoms in their cells. They also testified that officers were often in the security tower, but the tower officer was sometimes needed outside of the tower. However, Green testified that the tower was not the officers' primary means of observing the inmates. According to Green, the jail had many new and updated cameras, and officers were able to monitor all the zones from the control room. He testified that an officer could see footage from all the cameras at the jail at once using the screens in the control room. Adams also testified that the officers in the control room could easily observe the inmates.

Nurse Janet Moore testified that on the morning of July 21, 2015, she made rounds in D zone distributing medications and did not notice anything unusual. According to Nurse Moore, within five minutes of her leaving that zone, she was alerted that an incident had taken place. She testified that when she responded, she discovered that Plaintiff had been injured in an attack. According to Nurse Moore, she was treating Plaintiff within ten minutes of her leaving D zone.

First, the undersigned notes that during his testimony Plaintiff alleged that Defendants move him from one zone to another and referred to him by a different name, Reginald Alford, in order to retaliate against him for filing lawsuits. Plaintiff did not assert a retaliation claim in his complaint nor has he ever moved to amend his complaint to assert such a claim. Thus, the claim should be denied.

Moreover, Plaintiff has failed to prove a retaliation claim.[8]  The more reliable evidence supports a finding that the act of moving Plaintiff to a different zone was not motivated by retaliation.  Both Defendant Green and Donna Adams testified that Plaintiff had to be moved from one zone to another because he created problems with other inmates.  Additionally, the more reliable evidence supports a finding that the act of referring to Plaintiff by a different name was motivated by confusion caused by Plaintiff himself, not retaliation.  Plaintiff admitted that the FBI informed jail officials of the name Reginald Alford and admitted that he had used Reginald Alford as an alias in the past in order to forge documents.  He also admitted that he had used at least ten different aliases in the past.  Moreover, Plaintiff caused confusion in this Court by filing this very action under the name Reginald Alford. *See* Complaint [1]; Order [22].

Concerning Plaintiff's failure to protect claim, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from violence committed by other prisoners. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1999).  However, "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To establish a failure-to-protect claim, a prisoner must show that "he was incarcerated under

---

[8] In order to assert a retaliation claim, an inmate must show "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012).  A plaintiff must make a showing that but for the retaliatory motive, the action complained of would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997).  A plaintiff must either produce direct evidence of the defendant's motivation to retaliate or "allege a chronology of events from which retaliation may plausibly be inferred." *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999).  "A prisoner who brings a retaliation claim bears a heavy burden that may not be satisfied with conclusional allegations or his own personal beliefs." *Williams v. Dretke*, 306 Fed. App'x 164, 167 (5th Cir. 2009).  Courts must take a skeptical view of retaliation claims to avoid meddling in every act of discipline imposed by prison officials. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006).

conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999).

Deliberate indifference consists of the official being aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "'is an extremely high standard to meet.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). Negligent failure to protect an inmate does not rise to the level of a constitutional violation. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer*, 511 U.S. at 837.

Plaintiff failed to prove that Defendants knew there was a substantial risk of serious harm to Plaintiff and were deliberately indifferent to that risk. Plaintiff testified that at some point prior to the attack, one of his attackers, Inmate Harris, threw water into his cell. This testimony, without more, does not establish that Defendants knew Inmate Harris, or any other inmate, posed a substantial risk to Plaintiff. Additionally, the evidence submitted during the evidentiary hearing proves that jail officials were closely monitoring the inmates, and officers promptly responded to the attack. Plaintiff submitted two incident reports demonstrating that an officer in the control room reported unusual activity in D zone and other officers immediately responded. *See* Plaintiff's Exhibits F1 & L. Nurse Moore testified that she was alerted about the incident within five minutes of leaving D zone. Based on the foregoing, the undersigned concludes that Plaintiff has failed to establish by a preponderance of the evidence that Defendants violated his constitutional rights by failing to protect him from harm.

**Official Capacity and Governmental Entity**

To the extent Plaintiff asserts claims against Pike County and the individual Defendants in their official capacities, such claims also fail. There is no *respondeat superior* liability under Section 1983. *See Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002). Further, Plaintiff failed to prove that Pike County implemented a policy, custom, or practice that was the "moving force" behind a constitutional violation. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that this action be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 9th day of February, 2018.

                                        s/ Michael T. Parker
                                        United States Magistrate Judge