IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


HENRY HINTON, JR.                                            PLAINTIFF

VS.                            CIVIL ACTION NO. 5:15-cv-77(DCB)(MTP)

PIKE COUNTY, MISSISSIPPI;
SHERIFF MARK SHEPPARD;
CAPTAIN GLEN GREEN; and
LIEUTENANT UNKNOWN SMITH                                     DEFENDANTS


                ORDER ADOPTING REPORT AND RECOMMENDATION

     This cause is before the Court on the Report and
Recommendation of United States Magistrate Judge Michael T. Parker
**(docket entry 142)**, on the plaintiff Henry Hinton, Jr.'s Motion for
Relief **(docket entry 143)**, and on the plaintiff's Motion for
Extension of Time to File Objections **(docket entry 145)**. Having
carefully considered the record in this case, the Report and
Recommendation, and the plaintiff's subsequent motions, the Court
finds as follows:

     This cause was originally filed by the plaintiff pursuant to
42 U.S.C. § 1983 on August 19, 2015. Following an Omnibus hearing,
numerous motions by plaintiff and defendants, and several rulings
by Magistrate Judge Parker and this Court, an evidentiary hearing
was held on January 29, 2018, and Magistrate Judge Parker entered
his Report and Recommendation on February 9, 2018, pursuant to 28
U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).
The Report and Recommendation advised plaintiff Hinton that he

could file written objections to the Report and Recommendation within 14 days after being served a copy of same. On February 14, 2018, Hinton filed his Motion for Relief, which the Court treats as his written objections. Subsequently, on February 26, 2018, Hinton filed a Motion for Extension of Time to File Objections. Because this motion contains additional objections, the Court treats the Motion for Relief and Motion for Extension of Time collectively as Hinton's written objections. Insofar as Hinton's Motion for Extension of Time seeks additional time to file a third set of objections, it is denied.

When a party objects to a Report and Recommendation, this Court is required to "make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). <u>See also Longmire v. Gust</u>, 921 F.2d 620, 623 (5th Cir. 1991)(a party is "entitled to a <u>de novo</u> review by an Article III Judge as to those issues to which an objection is made."). Such review means that this Court will examine the entire record and will make an independent assessment of the law. The Court is not required, however, to reiterate the findings and conclusions of the Magistrate Judge, <u>Koetting v. Thompson</u>, 995 F.2d 37, 40 (5th Cir. 1993), nor need it consider objections that are frivolous, conclusive or general in nature. <u>Battle v. United States Parole Commission</u>, 834 F.2d 419, 421 (5th Cir. 1997). No factual objection

is raised when a petitioner merely re-urges arguments contained in the original petition. <u>Edmond v. Collins</u>, 8 F.3d 290, 293 (5th Cir. 1993).

The plaintiff's lawsuit arises from events which took place while he was incarcerated at the Pike County Jail. According to the plaintiff, he entered the jail on June 30, 2014, and was transferred to a Mississippi Department of Corrections facility on November 24, 2015. The plaintiff asserts three claims in this action: (1) a denial of access to court claim against defendant Sheppard; (2) a conditions of confinement claim against defendants Sheppard, Green, and Smith; and (3) a failure to protect claim against defendant Sheppard. The plaintiff seeks compensatory and punitive damages from the defendants.

The plaintiff alleges in his denial of access to court claim that he lost a forfeiture hearing in state court and missed his opportunity to appeal the forfeiture ruling because he did not have access to a law library or other legal assistance while housed in the Pike County Jail. At his evidentiary hearing, Hinton testified that he was arrested on June 30, 2014, and at the time of his arrest, police officers seized $7,746.00. The plaintiff testified that the money was discovered in a backpack along with marijuana. He further testified that he was charged with intent to distribute controlled substances and the prosecution pressured him to enter a guilty plea. He also testified that he dismissed his first two

public defenders because they recommended that he enter a guilty plea. On October 5, 2015, after the plaintiff was appointed a third public defender, he entered an <u>Alford</u> plea. At his hearing before Magistrate Judge Parker, he submitted into evidence a transcript of his plea hearing.

Hinton testified that while he was in jail, he filed a claim in state court for the seized $7,746.00 and, in November of 2015, attended a forfeiture hearing in state court. During the state court hearing the money was ordered forfeited. At the hearing before Magistrate Judge Parker, Hinton submitted the state court's forfeiture order into evidence and testified that, after the forfeiture order was entered, he wrote the clerk of court regarding an appeal, but by the time he received the clerk's response, his deadline to appeal the forfeiture order had passed. Hinton submitted into evidence his letter and the clerk's response.

The plaintiff testified that the Pike County Jail did not have a law library nor any legal aid officials. He also testified that he requested that the jail administrator, defendant Glen Green, provide him a copy of the rules of civil procedure. Defendant Green testified that he did not recall Hinton ever requesting a copy of the rules of civil procedure. Defendant Green, however, testified that the jail did not have a law library. According to Green, a law library was unnecessary because each of the inmates housed in the jail was represented by an attorney. The plaintiff

testified that because he did not have access to a law library or other legal assistance, he lost at the forfeiture hearing and missed his opportunity to appeal the forfeiture ruling. According to Hinton, if he had had access to a law library or legal assistance, he would have prevailed at the forfeiture hearing because the State wrongfully used his <u>Alford</u> plea, which was not an admission of guilt, to support the forfeiture. The plaintiff also asserted that, with access to a law library or legal assistance, he would have known how and when to appeal the forfeiture ruling.

In his Report and Recommendation, Magistrate Judge Parker notes that "[p]risoners possess a constitutional right of access to courts, including having the 'ability ... to prepare and transmit a necessary legal document to court.' <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996). The right of access to the courts is limited to allow prisoners opportunities to file nonfrivolous claims challenging their convictions or conditions of confinement. <u>Jones v. Greninger</u>, 188 F.3d 322, 325 (5th Cir. 1999). 'Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation.' <u>Chriceol v. Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999)(citation omitted)."

However, Magistrate Judge Parker also finds that "'[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation.' <u>Ruiz v. United States</u>, 160 F.3d 273, 275 (5th Cir. 1998); <u>Henthorn v. Swinson</u>, 955

F.2d 351, 354 (5th Cir. 1992).  It is only when a prisoner suffers

some sort of actual prejudice or detriment from denial of access to

the courts that the allegation becomes one of constitutional

magnitude.  <u>Walker v. Navarro County Jail</u>, 4 F.3d 410, 413 (5th Cir.

1993); <u>Howland v. Kilquist</u>, 833 F.2d 639, 642 (7th Cir. 1987).  To

prove his claim, a plaintiff must show real detriment – a true

denial of access, such as the loss of a motion; the loss of a right

to commence, prosecute, or appeal in a court; or substantial delay

in obtaining a judicial determination in a proceeding.  <u>See</u> <u>Oaks v.</u>

<u>Wainwright</u>, 430 F.2d 241 (5th Cir. 1970)."

Mississippi Code Annotated § 41-29-179(2) provides as follows:

> If the owner of the property has filed an answer
> denying that the property is subject to forfeiture, then
> the burden is on the petitioner to prove that the
> property is subject to forfeiture. However, if an answer
> has not been filed by the owner of the property, the
> petition for forfeiture may be introduced into evidence
> and is prima facie evidence that the property is subject
> to forfeiture.  The standard of proof placed upon the
> petitioner in regard to property forfeited under the
> provisions of this article shall be by a preponderance of
> the evidence.

Miss. Code Ann. § 41-29-179(2).

The burden of proof in a forfeiture action differs from that

involved in a criminal trial.  The State need not prove beyond a

reasonable doubt that a connection exists between the forfeited

property and the illegal activity.  Thus, a criminal conviction is

not a prerequisite to a civil forfeiture.  <u>See</u> <u>State ex rel.</u>

<u>Mississippi Bureau of Narcotics v. Lincoln County</u>, 605 So.2d 802,

804 (Miss. 1992). Mississippi Code Annotated § 41-29-153 identifies property subject to forfeiture, including money. Section 41-29-153(7) provides that "[a]ll monies, coin and currency found in close proximity to forfeitable controlled substances ... are presumed to be forfeitable under this paragraph; the burden of proof is upon claimants of the property to rebut this presumption."

The state court's forfeiture order recites that the "Mississippi Bureau of Narcotics has put forth proof that property at issue is subject to forfeiture under the provisions of §§ 4[1]-29-153(a)(5) and 41-29-153(a)(7) of the Mississippi Code of 1972, as amended, having been used, or intended for use, in violation of the Uniform Controlled Substances Law and having been found in close proximity to forfeitable controlled substances, to-wit: marijuana." <u>See</u> Plaintiff's Exhibit L.

During testimony before Magistrate Judge Parker, the plaintiff admitted that the $7,746.00 was found in a backpack along with marijuana. Additionally, during the plaintiff's plea hearing in state court, the court asked the plaintiff "Are you satisfied that if we brought a jury in here, and they heard the four charges, that there would be enough evidence that they might conclude that you were guilty of each of the charges?" The plaintiff answered "Yes sir." <u>See</u> Plaintiff's Exhibit L.

The state court also explained to the plaintiff that a police officer would testify that he saw Hinton throw two prescription

bottles out of his vehicle, bottles which contained a substantial quantity of hydrocodone obtained by fraudulent prescriptions. The state court explained that officers found twenty grams of marijuana and over five units of Alprazolam in the plaintiff's possession. The court also explained that records would be presented indicating that the plaintiff planned to distribute the controlled substances. See Plaintiff's Exhibit L.

The plaintiff has failed to prove that he suffered any sort of actual prejudice. The record demonstrates that sufficient evidence was available to prove by a preponderance of the evidence that the money at issue was found in close proximity to forfeitable controlled substances and was used, or was intended for use, in violation of the Uniform Controlled Substances Law. Additionally, Hinton has failed to prove that any appeal of the forfeiture order would have had arguable merit amounting to "more than hope." Christopher v. Harbury, 536 U.S. 403, 415-16 (2002). The only issue for appeal identified by the plaintiff was his argument that the State wrongfully used his Alford plea to support the forfeiture. This issue is frivolous inasmuch as the record demonstrates that the $7,746.00 was subject to forfeiture under the provisions of Miss. Code Ann. § 41-29-153. In his Report and Recommendation, Magistrate Judge Parker concludes that Hinton has failed to establish by a preponderance of the evidence that defendant Sheppard violated his constitutional rights by denying

him access to the courts.

The plaintiff also raises a conditions of confinement claim, asserting that he was provided inadequate clothing and supplies while at the Pike County Jail. He also asserts that he complained about hazardous and unsanitary conditions at the jail. Specifically, Hinton testified that when he arrived at the Pike County Jail, he was provided one jumpsuit, but his underwear was confiscated because only white or grey underwear was allowed at the jail. According to the plaintiff, inmates had to purchase underwear from the jail commissary. Hinton testified that jail officials offered to launder inmates' jumpsuits once a week, but because he was only provided one jumpsuit and no underwear, he was unable to have the clothes laundered as he did not want to be naked. The plaintiff also testified that he was not provided a coat, which left him with the choice of staying inside during recreation periods or going outside in cold weather.

Jail Administrator Green testified that jail officials offered to launder clothes once a week. Defendant Green also testified that if an inmate turned a jumpsuit in to be laundered, he was issued another clean jumpsuit. Green further stated that the facility was well-heated, and that inmates had the option of purchasing a coat from the commissary.

The plaintiff testified that he was provided one bar of soap when he arrived at the jail, but officers would not provide him

additional soap because of defendant Green's policy, which only allowed new inmates to get soap. According to Hinton, inmates had to purchase additional soap instead of receiving free soap. The plaintiff also testified that he was not provided a towel and did not have money to purchase a towel.

At the hearing, Donna Adams, a correctional officer at the jail during the time Hinton was incarcerated, testified that despite the policy regarding soap, officers were instructed to pass out soap to inmates, and that she provided soap to inmates during inmate booking/intake. According to Adams, towels were included in the inmates' intake packages. Defendant Green also testified that all inmates had towels.

The plaintiff testified that he was provided a blanket but no bed sheets and, as a result, had to sleep on a plastic mattress. According to the plaintiff, this was uncomfortable because he would sweat during the night. In response, defendant Green testified that sheets were not provided because they were considered a hazard as they could be used by inmates to hang themselves. Green also testified that cost was a factor in the decision not to provide sheets.

Hinton stated that officers did not provide the inmates any cleaning supplies, which resulted in mold in the showers and dirty cells. According to the plaintiff, bleach was sprayed in the shower once a month. In response, both defendant Green and witness

Donna Adams testified that each morning inmates were provided cleaning supplies, including mops, mop buckets, soap, and toilet brushes.  In fact, the plaintiff admitted that inmates were provided a mop and mop bucket.  According to defendant Green, most of the inmates would keep their area clean.  Donna Adams testified that officers previously provided inmates spray bottles filled with bleach to clean the showers each morning.  However, the policy was subsequently changed, and trustees were allowed to spray bleach in the showers every two weeks.  Adams also testified that at one time mold would appear in the showers rather quickly, but during the plaintiff's incarceration, the showers were repainted using a mold resistant paint.  Hinton admitted that he remembered the showers being painted.

The plaintiff also testified that lights in many of the cells were broken, and that certain cells had metal plates welded over the windows.  Hinton also testified that the jail contained exposed electrical wires, which resulted in him being shocked on multiple occasions.  He testified that defendant Smith stated the lights would be fixed when the inmates stopped breaking them.

According to the plaintiff, he was housed without lights in one of his cells for seven months.  The plaintiff submitted into evidence a letter he wrote to the maintenance supervisor stating, "you told me you would be right back and refit the bulb ends, I waited and waited.  You got a chance to see how dark 120 is ....

Would you please come back today ...." <u>See</u> Plaintiff's Exhibit H-1.2.

Defendant Green testified that two cells in the jail had windows with metal plates welded over them due to inmate destruction. Green also testified that inmates would often break their lights and utilize exposed wires to heat coffee and for other purposes. According to Green, once officials became aware of a broken light, the maintenance department would repair or replace it as soon as possible. Donna Adams also testified that once a light was broken, the maintenance workers would be notified and they would fix the light.

The Eighth Amendment protects inmates from cruel and unusual punishment and requires prison officials to provide humane conditions of confinement. <u>Palmer v. Johnson</u>, 193 F.3d 346, 351-52 (5th Cir. 1999). As a pretrial detainee, however, the plaintiff's constitutional right to adequate conditions of confinement "flow[s] from both the procedural and substantive due process guarantees of the Fourteenth Amendment." <u>Hare v. City of Corinth, Miss.</u>, 74 F.3d 633, 639 (5th Cir. 1996)(citing <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979)).

Pretrial detainees have a due process right not to be subjected to jail conditions that are imposed for the purpose of punishment. <u>Bell</u>, 441 U.S. at 535; <u>Hamilton v. Lyons</u>, 74 F.3d 99, 103 (5th Cir. 1996). For Section 1983 claims by pretrial detainees,

the Fifth Circuit Court of Appeals has distinguished between claims regarding specific acts by officials and those regarding general conditions of confinement. <u>See</u> <u>Hare</u>, 74 F.3d at 639. A "conditions of confinement" claim is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." <u>Id</u>. at 643-44. In order to succeed on a claim alleging unconstitutional jail conditions, a pretrial detainee must establish that the complained-of conditions have been imposed for a punitive purpose and that they have resulted in "serious deficiencies" in providing for his "basic human needs." <u>Shepherd v. Dallas Cnty.</u>, 591 F.3d 445, 454 (5th Cir. 2009). A punitive purpose may be inferred where the conditions are not reasonably related to a legitimate governmental interest. <u>Hamilton</u>, 74 F.3d at 105.

An episodic act or omission claim requires courts to employ the standard of deliberate indifference. This involves the following elements of proof: (1) an objective component, under which the detainee must prove his exposure to a harm or injury that violates contemporaneous standards of decency, and (2) a subjective component, under which the detainee must prove that the defendants' conduct evidences a deliberate indifference to that exposure. <u>Helling v. McKinney</u>, 509 U.S. 25, 35-36 (1993). In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious

harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). To be "sufficiently serious," the deprivation must deny the plaintiff "the minimal measure of life's necessities." <u>Palmer</u>, 193 F.3d at 352. Under the subjective component, "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837. Deliberate indifference "is an extremely high standard to meet." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." <u>Farmer</u>, 511 U.S. at 837.

Based on the testimony and evidence submitted at the evidentiary hearing, the undersigned agrees with Magistrate Judge Parker's conclusion that the defendants did not violate the plaintiff's constitutional right concerning the conditions of his confinement. It is true that the defendants did not dispute Hinton's testimony that he was not provided a coat or sheets. The plaintiff, however, did not prove that these conditions were imposed for a punitive purpose or that they resulted in "serious deficiencies" in providing for his "basic human needs." <u>See</u> <u>Shepherd</u>, 591 F.3d at 454. Defendant Green specifically testified that sheets were not provided because inmates could use the sheets to hang themselves. Jail officials have a legitimate governmental interest in protecting inmates from suicide. <u>See</u> <u>Phillips v. East</u>,

81 Fed. App'x. 483, 485 (5th Cir. 2003)("The denial of a blanket and a mattress was pursuant to a prison regulation denying bedding to inmates in isolation in order to prevent the higher risk of inmate suicide, a legitimate penological interest."). Although sleeping without sheets and going outside without a coat for a short period of time may be uncomfortable, such conditions did not constitute a deprivation of the plaintiff's basic human needs. "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." <u>Lee v. Hennigan</u>, 98 Fed. App'x. 286, 288 (5th Cir. 2004).

As for Hinton's remaining conditions of confinement claims, the undersigned also agrees with Magistrate Judge Parker that the more reliable evidence supports a finding that the defendants did not violate the plaintiff's constitutional rights. Donna Adams testified that she and other officers provided soap, towels, and cleaning supplies to inmates. The plaintiff even admitted that soap and certain cleaning supplies were sometimes provided, and admitted that the showers were painted during his incarceration.

Defendant Green contradicted the plaintiff's testimony regarding his inability to launder his jumpsuit. According to Green, if an inmate turned a jumpsuit in to be laundered, he was issued another clean jumpsuit. Magistrate Judge Parker found Green's testimony credible, and this Court agrees with the

Magistrate Judge's finding.

Defendant Green and witness Adams also contradicted the plaintiff's testimony concerning lights by testifying that the maintenance department would repair or replace broken lights as soon as possible. The evidence submitted by the plaintiff supports this testimony. One of the plaintiff's exhibits demonstrates that a maintenance man checked on Hinton's lighting and informed him that he would be back to fix the light. See Plaintiff's Exhibit H-1.2. Another exhibit submitted by the plaintiff reveals that he thanked officials for "promptly responding by repairing the hot water and replacing the nite [sic] light." See Plaintiff's Exhibit G-2.

The undersigned finds, as did the Magistrate Judge, that the defendants did not subject the plaintiff to conditions which resulted in "serious deficiencies" in providing for his "basic human needs." See Shepherd, 591 F.3d at 454. To the extent that the plaintiff sought to prove an episodic act or omission claim, he has failed to prove that the defendants acted with the requisite deliberate indifference. Moreover, his claims for compensatory damages are barred by the physical injury requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997, et seq. The plaintiff did not prove by a preponderance of the evidence that he suffered a physical injury; thus, his claims for compensatory damages must be denied. See Geiger v. Jowers, 404 F.3d 371, 375

(5th Cir. 2005)("Section 1997e(e)[1] applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries nonrecoverable, absent physical injury.").[2]

As for the plaintiff's failure to protect claim, Hinton testified that towards the end of May, 2015, jail officials moved him from housing zone C, which housed older inmates, to housing zone D, which housed violent offenders.  The plaintiff also testified that around this same time period officials began referring to him as "Reginald Alford," not Henry Hinton.  According to the plaintiff, officials moved him and began referring to him by another name in retaliation for his filing lawsuits.  Hinton testified that he wrote the kitchen staff, complaining about the amount of salt in the food.  According to the plaintiff, a jail trustee informed the other inmates that Hinton had complained about the amount of salt in the food.  Hinton testified that in early July, 2015, Inmate Harris began throwing water in the plaintiff's cell because of his complaints regarding the food.  According to

---

[1] 42 USCA § 1997e(e) provides: "Limitation on recovery: No Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or commission of a sexual act (as defined in section 2246 of Title 18)."

[2] Despite the limitations imposed by § 1997e(e), a prisoner can, absent a showing of physical injury, pursue punitive or nominal damages based upon a violation of his constitutional right, but the plaintiff has failed to prove a constitutional violation.  See Hutchins v. McDaniels, 512 F.3d 193, 197-98 (5th Cir. 2007).

Hinton, Harris was removed from D zone, but because officers did not file a report about the incident, Harris was eventually returned to D zone.

The plaintiff also testified that on July 21, 2015, five inmates, including Harris, attacked him and stabbed him under his eye. According to the plaintiff, his doctor informed him that, as a result of the injury, he has droopy eye syndrome and needs surgery. Hinton testified that during the attack, he could not call for help because the intercom in his cell was not functioning. He also testified that no one was manning the security tower at the time of the attack.

Defendant Green and witness Adams testified that inmates often destroyed the intercoms in their cells. They also testified that officers were often in the security tower, but the tower officer was sometimes needed outside of the tower. However, Green testified that the tower was not the officers' primary means of observing the inmates. According to Green, the jail had many new and updated cameras, and officers were able to monitor all the zones from the control room. Green also testified that an officer could see footage from all the cameras at the jail at once using the screens in the control room. Adams also testified that the officers in the control room could easily observe the inmates.

Nurse Janet Moore testified that on the morning of July 21, 2015, she made her rounds in D zone distributing medications and

did not notice anything unusual. According to Nurse Moore, within five minutes of her leaving that zone, she was alerted that an incident had taken place. She testified that when she responded, she discovered that the plaintiff had been injured in an attack. According to Nurse Moore, she was treating the plaintiff within ten minutes of her leaving D zone.

Magistrate Judge Parker notes that Hinton, during his testimony, alleged that the defendants moved him from one zone to another and referred to him by a different name, "Reginald Alford," in order to retaliate against him for filing lawsuits. Hinton did not assert a retaliation claim in his complaint, nor has he ever moved to amend his complaint to assert such a claim. Thus, the claim shall be denied.

In addition, Hinton has failed to prove a retaliation claim. To prove such a claim, an inmate must show "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McFaul v. Valenzuela, 684 F.3d 564, 578 (5th Cir. 2012). A plaintiff must make a showing that but for the retaliatory motive, the action complained of would not have occurred. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). A plaintiff must either produce direct evidence of the defendant's motivation to retaliate or "allege a chronology of events from which retaliation may plausibly be inferred." Jones v.

Greninger, 188 F.3d 322, 325 (5th Cir. 1999). "A prisoner who brings a retaliation claim bears a heavy burden that may not be satisfied with conclusory allegations or his own personal beliefs." Williams v. Dretke, 306 Fed. App'x 164, 167 (5th Cir. 2009). Courts must take a skeptical view of retaliation claims to avoid meddling in every act of discipline imposed by prison officials. Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006).

The more reliable evidence in this case supports a finding that the act of moving Hinton to a different zone was not motivated by retaliation. Both defendant Green and Donna Adams testified that the plaintiff had to be moved from one zone to another because he created problems with other inmates. Additionally, the more reliable evidence supports a finding that the act of referring to the plaintiff by a different name was motivated by confusion caused by the plaintiff himself, not by retaliation. Hinton admitted that the FBI informed jail officials of the name "Reginald Alford," and Hinton admitted that he had used "Reginald Alford" as an alias in the past in order to forge documents. He also admitted that he had used at least ten different aliases in the past. Furthermore, the plaintiff has caused confusion in this Court by filing the present action under the name "Reginald Alford." See Complaint [docket entry 1]; Order [docket entry 22].

Concerning the plaintiff's failure to protect claim, the Due Process Clause of the Fourteenth Amendment protects pretrial

detainees from violence committed by other prisoners.  <u>See</u> <u>Hare v.</u>
<u>City of Corinth</u>, 74 F.3d 633, 639 (5th Cir. 1999).  However, "[i]t
is not ... every injury suffered by one prisoner at the hands of
another that translates into constitutional liability for prison
officials responsible for the victim's safety." <u>Farmer v. Brennan</u>,
511 U.S. 825, 832 (1994).  To establish a failure-to-protect claim,
a prisoner must show that "he was incarcerated under conditions
posing a substantial risk of serious harm and that prison officials
were deliberately indifferent to his need for protection." <u>Jones</u>
<u>v. Greninger</u>, 188 F.3d 322, 326 (5th Cir. 1999).  Deliberate
indifference consists of the official being aware of both the
"facts from which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw the inference."
<u>Farmer</u>, 511 U.S. at 837.  Deliberate indifference "'is an extremely
high standard to meet.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th
Cir. 2006)(quoting <u>Domino v. Texas Dep't. of Criminal Justice</u>, 239
F.3d 752, 756 (5th Cir. 2001)).  Negligent failure to protect an
inmate does not rise to the level of a constitutional violation.
<u>Oliver v. Collins</u>, 914 F.2d 56, 60 (5th Cir. 1990).  The test for
establishing deliberate indifference is "one of subjective
recklessness as used in the criminal law." <u>Farmer</u>, 511 U.S. at
837.

     The plaintiff failed to prove that the defendants knew there
was a substantial risk of serious harm to the plaintiff, and that

they were deliberately indifferent to that risk. Hinton testified that at some point prior to the attack, one of his attackers, Inmate Harris, threw water into his cell. This testimony, without more, does not establish that the defendants knew that Inmate Harris, or any other inmate, posed a substantial risk to the plaintiff. Additionally, the evidence submitted during the evidentiary hearing proves that jail officials were closely monitoring the inmates, and officers promptly responded to the attack. The plaintiff submitted two incident reports demonstrating that an officer in the control room reported unusual activity in D zone and other officers immediately responded. See Plaintiff's Exhibits F-1 & L. Nurse Moore testified that she was alerted about the incident within five minutes of leaving D zone.

Based on the foregoing, Magistrate Judge Parker concluded that the plaintiff failed to establish by a preponderance of the evidence that the defendants violated his constitutional rights by failing to protect him from harm, and this Court agrees.

Finally, to the extent that the plaintiff asserts claims against Pike County and the individual defendants in their official capacities, such claims also fail. There is no respondeat superior liability under Section 1983. See Oliver v. Scott, 276 F.3d 736, 742 & n.6 (5th Cir. 2002). Furthermore, the plaintiff failed to prove that Pike County implemented a policy, custom or practice that was the "moving force" behind a constitutional violation. See

Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).

Having made a de novo determination of those portions of Magistrate Judge Parker's Report and Recommendation to which objection is made by the plaintiff, the Court finds that the plaintiff's Complaint should be dismissed with prejudice.

ACCORDINGLY,

IT IS HEREBY ORDERED that the plaintiff's Motion for Relief **(docket entry 143)** and Motion for Extension of Time to File Objections **(docket entry 145)** are collectively treated by the Court as the plaintiff's Objections to Magistrate Judge Parker's Report and Recommendation;

FURTHER ORDERED that to the extent the plaintiff's Motion for Extension of Time to File Objections **(docket entry 145)** seeks additional time to file a third set of objections, said motion is DENIED;

FURTHER ORDERED that Magistrate Judge Michael T. Parker's Report and Recommendation **(docket entry 142)** is ADOPTED in its entirety as the findings and conclusions of this Court;

FURTHER ORDERED that the Plaintiff's Complaint under the Civil Rights Act, 42 U.S.C. § 1983, is DISMISSED WITH PREJUDICE.

SO ORDERED, this the 2nd day of March, 2018.

                                        /s/ David Bramlette
                                        UNITED STATES DISTRICT JUDGE